# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BLUE SKY BIO, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   Case No. 10 C 4612 |
|     v. | ) |
| | )   Honorable Suzanne B. Conlon |
| FEDERAL INSURANCE COMPANY, | ) |
| | ) |
|     Defendant. | ) |

**PLAINTIFF BLUE SKY BIO, LLC'S
<u>CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Robert A. Chapman (6191210)
Peter M. Spingola (6243942)
Sara Siegall (6297622)
**CHAPMAN & SPINGOLA LLP**
77 West Wacker Drive – Suite 4800
Chicago, Illinois 60601
312/606-8752

**Table of Contents**

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF FACTS .......................................................................................................... 3

    The Federal Insurance Policies ............................................................................................ 3

    The Nobel Action .................................................................................................................. 5

    The Trademark Claims ......................................................................................................... 5

ARGUMENT ................................................................................................................................ 6

    I.    Applicable Standard .................................................................................................. 6

    II.    Federal's Duty to Defend .......................................................................................... 6

    III.    The Trademark Infringement Claims Brought Against Blue Sky in the Noble Action Met the Federal Policies' Definition of Advertising Injury and Did Not Fall Within the IP Exclusion Nor Within the Intended Injury Exclusion, Thereby Obligating Federal to Defend Blue Sky in that Litigation ................................................................................ 8

        A.    Nobel's Trademark Claims Meet the Definition of "Advertising Injury" Contained in the Federal Policies ................................................................................ 8

        B.    The IP Exclusion Does Not Apply to the Otherwise Covered "Advertising Injury" Claims Because They Were Based Solely upon Nobel's Trademark Infringement Allegations and Were Independent From and Unrelated to the Patent Infringement Claims ................................................................................................................. 9

        C.    The Intended Injury Exclusion in the Federal Policies by Definition Does Not Apply to the Specified Advertising Injury Claim Arising Out of the Trademark Claims in the Nobel Complaint ................................................................................ 14

CONCLUSION ........................................................................................................................... 15

## INTRODUCTION

Defendant Federal Insurance Company ("Federal") wrongfully refused to provide a defense to its insured, plaintiff Blue Sky Bio, LLC ("Blue Sky"), a manufacturer and innovator of compatible and affordable dental implants and accessories, when Blue Sky was sued by a competitor for alleged trademark infringement and other claims. In *Nobel Biocare USA, LLC, et al. v. Blue Sky Bio, LLC*, Case No. CV08-1407 (C.D. Cal. 2008) (the "Nobel Action"), the complaint Nobel filed against Blue Sky (the "Nobel Complaint") contained three trademark infringement/dilution "advertising" claims that obligated Federal to defend the Nobel Action under the "Life Sciences Insurance Program" insurance policies that Federal issued for Blue Sky's benefit (the "Federal Policies"). Federal, therefore, is liable to Blue Sky for the costs, including attorneys' fees, that Blue Sky incurred in defending itself in the Nobel Action.

The trademark infringement counts brought against Blue Sky in the Nobel Action fall within the Federal Policies' definition of covered "advertising injury" claims – a fact that Federal expressly admits in both its original denial of coverage letter and in its memorandum in support of its motion here. Therefore, Federal must show affirmatively that an exclusion contained in the policies removed, beyond any doubt, these claims from coverage and excused Federal from defending Blue Sky. Federal cannot demonstrate, however, that either the "Intellectual Property Laws or Rights Exclusion" (the "IP Exclusion") or the "Expected or Intended Injury Exclusion" (the "Intended Injury Exclusion") applied to the trademark claims raised in the Nobel Complaint.

The IP Exclusion in the Federal Policies does not apply to any claim that falls within the specific definition of advertising injury, such as trademark infringement, except if that otherwise covered advertising claim arises out of, gives rise to or relates in any way to an intellectual property right that is not one of the defined advertising injuries. The Nobel Complaint alleged that Blue Sky infringed on Nobel's registered trademark by using it

improperly in Blue Sky advertisements. While the Nobel Complaint also included claims against Blue Sky for patent infringement, the otherwise covered trademark infringement claims were wholly independent causes of action that do not rely on or relate to the patent claims that happen to appear elsewhere in the Nobel Complaint.

If the patent claims had all been dismissed or even if they had never even been raised in the Nobel Action, Nobel still could have brought and could have prevailed on its trademark infringement claims. The Federal Policies do not state that an otherwise covered advertising injury claim is automatically excluded from coverage merely because it appears in the same complaint with an excluded IP claim, but Federal is asking the Court to rewrite the Federal Policies to say just that. This the Court cannot do. Precisely on these grounds, a United States District Court recently ruled that Federal had improperly refused to provide a defense to its insured, rejecting the same argument that Federal posits here – that the identical IP Exclusion excused Federal from its duty merely because the underlying complaint contained some excluded intellectual property claims. *Align Tech., Inc. v. Fed. Ins. Co.*, 673 F.Supp.2d 957, 968 (N.D. Cal. 2009).[1]

Likewise, the Expected or Intended Injury Exclusion does not apply to the trademark claims because, while some trademark infringement may be intentional or willful (knowingly expected to cause injury), trademark infringement need not be willful to support recovery (even when a plaintiff alleges willfulness as was the case in the Nobel Action). Courts have consistently held that provisions like the Intended Injury Exclusion do not nullify coverage in such situations, where Nobel could have prevailed on a theory of liability on the trademark

---

[1] At most, the language in the IP Exclusion is ambiguous, meaning it is susceptible to more than one reasonable interpretation. Like a complicated maze, the Federal Policy inserts an IP Exclusion that contains an exemption to the exclusion for covered advertising injury claims and then adds an exception to the exemption under certain circumstances. In the event the Court finds that the Federal Policies' language is ambiguous, under settled Illinois insurance contract law, the interpretation that favors Blue Sky (the insured) prevails.

infringement claims raised without proving that Blue Sky knowingly acted with intent to cause injury.

The advertising injury trademark claims alleged against Blue Sky in the Nobel Action required Federal to provide Blue Sky with a defense. Blue Sky is entitled to judgment on the issue of Federal's breach of its duty to defend Blue Sky in the Nobel Action.

## STATEMENT OF FACTS

The facts before the Court on the parties' motion and cross-motion are not in dispute and are encompassed by and limited to the Federal Policies and the Nobel Complaint as stated in Blue Sky's Complaint in this action.

*The Federal Insurance Policies*

Federal issued Customarq Series Life Sciences Insurance Program policy number 3588-48-58 to Blue Sky with an effective coverage period from June 15, 2007 to June 15, 2008, and renewed the policy beginning June 15, 2008, and ending June 15, 2009. The Federal Policies are attached as exhibits to Blue Sky's Complaint. Blue Sky Complaint, ¶7, Exhibit A (2007 Policy) and Exhibit B (2008 Policy).

The Federal Policies provide coverage for: "damages that the insured becomes legally obligated to pay by reason of liability…for **advertising injury**…to which this coverage applies." 2007 Policy, Form 80−02−2002 at p. 3; 2008 Policy, Form 80-02-2058 at p. 5. A**dvertising injury**" is defined by the Federal Policies in part as: "injury, other than bodily injury, property damage or personal injury, sustained by a person or organization and caused by an offense of infringing, in that particular part of your advertisement about your goods, products or services, upon their (1) copyrighted advertisement; or (2) registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title." 2007 Policy, Form 80−02−2002 at p. 25; 2008 Policy, Form 80-02-2058 at p. 34. "**Advertisement**" is defined by

3

the Federal Policies in part as "electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services." 2007 Policy, Form 80−02−2002 at p. 25 and 2008 Policy, Form 80-02-2058 at p. 34.

The Federal Policies provide for the defense of claims and the payment as follows:

> "Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured** against a **suit**, even if such **suit** is false, fraudulent or groundless. If such a **suit** is brought, we will pay reasonable attorney fees and necessary litigation expenses to defend…the **insured**…."

2007 Policy, Form 80-02-2002 at p. 4; 2008 Policy, Form 80-02-2058 at p. 7.

The IP Exclusion states that the Federal Policies do not apply to:

> "any actual or alleged…advertising injury…arising out of, giving rise to or in any way related to any actual or alleged: (1) assertion; or (2) infringement or violation; by any person or organization (including any insured) of any intellectual property law or right, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation."

2007 Policy, Form 80−02−2002 at p. 16; 2008 Policy, Form 80-02-2058 at pp. 23-24.

The "exception" to the IP Exclusion states that the IP Exclusion applies:

> "unless such injury: (1) is caused by an offense described in the definition of **advertising injury**; and (2) does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement, or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury.**"

2007 Policy, Form 80−02−2002 at 16-17; Exhibit B, Form 80-02-2058 at pp. 23-24.

The Intended Injury Exclusion states that the Federal Policy does not apply to: "advertising injury…arising out of an offense committed by or on behalf of the insured, that: (1) is intended by the insured; or (2) would be expected from the standpoint of a reasonable person in the circumstances of such insured; to cause injury." 2007 Policy, Form 80−02−2002 at p. 13; 2008 Policy, Form 80-02-2058 at p. 20.

4

*The Nobel Action*

On February 28, 2008, Nobel filed the Nobel Action against Blue Sky. On July 9, 2008 Nobel filed its Second Amended Complaint. Blue Sky Complaint, Exhibit C. The ten count Nobel Complaint sought damages and injunctive relief against Blue Sky for various acts that Nobel contended violated its rights. The Nobel Complaint contained two Trademark Infringement claims (III and VI); a Trademark Dilution claim (VII); three Patent Infringement claims (I, II and VIII); two False Advertising claims (IX and X), an Unfair Competition claim (V); and a False Designation of Origin claim (IV).

*The Trademark Claims*

Claim III of the Nobel Complaint alleged federal trademark infringement arising under 15 U.S.C. § 1114 for Blue Sky's purportedly using, without consent, "a confusingly similar trademark in the advertising and sale of Blue Sky's products, thereby causing a likelihood that customers would believe Blue Sky's products are associated with, sponsored by, or approved by Nobel, when they are not." Nobel Complaint, ¶42. Claim VI of the Noble Complaint asserted common law trademark infringement for Blue Sky's allegedly causing a "likelihood of confusion among the purchasing public…." Nobel Complaint, ¶57. Claim VII of the Noble Complaint alleged trademark dilution under 15 U.S.C. § 1125(c) for Blue Sky's using Noble's marks in a way that "tarnished and diluted the distinctive quality" of the marks. Nobel Complaint, ¶64.

On October 9, 2008, Federal notified Blue Sky that it would not provide Blue Sky a defense or indemnity regarding the Nobel Action. Blue Sky Complaint, Exhibit D. On December 15, 2009, the Nobel Action was settled on a confidential basis, but not before Blue Sky paid more than $800,000 in attorneys' fees and related litigation costs.

5

## ARGUMENT

### I. Applicable Standard

Entry of judgment on the pleadings is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Alexander v. City of Chicago*, 994 F. 2d. 333, 336 (7th Cir. 1993). The appropriate standard of review of a motion for judgment on the pleadings "is that applicable to summary judgment, except that the court may consider only the contents of the pleadings. [Cite omitted]. Thus, [the court] will take all well-pleaded allegations in the pleadings to be true, and [the court] view[s] the facts and inferences to be drawn from those allegations in the light most favorable to the [non-moving party]." *Id.*[2] On a motion for judgment on the pleadings, the court may not consider documents other than the pleadings, but, as Federal also notes (Federal Memo. at p. 7), the court may consider documents that have been attached as exhibits to the pleadings. *Wood,* 925 F. 2d. at 1581-82.

### II. Federal's Duty to Defend

Under Illinois law, an insurer's duty to defend arises when the claims alleged in the underlying complaint fall within, or *potentially* within, the coverage of the policy, according to the policy language. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108 (1992). The "duty to defend is much broader than [the] duty to indemnify." *Millers Mutual Ins. Assn. v. Graham Oil Co.*, 228 Ill. App. 3d 129, 134 (2d Dist. 1996). "[I]f the [underlying] complaint states a claim that is within, or even potentially or *arguably within*, the scope of coverage provided by the policy, [then the insurer] must provide a defense." *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1039 (7th Cir.1992) (emphasis added). The

---

[2] Federal cites *Wood v. United States*, 925 F.2d 1580, 1581 (7th Cir. 1991) (Federal Memo. at p. 7) for the proposition that a motion for a judgment on the pleadings is viewed under the same standard as a motion to dismiss. *Alexander*, decided after *Wood*, disagrees. The Court should apply the summary judgment standard of review in ruling on Blue Sky's cross-motion.

inquiry is whether "the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Cincinnati Ins. Co. v. Eastern Atlantic Ins.* Co., 260 F.3d 742, 745 (7th Cir. 2001).

An insurer may refuse to defend only when the underlying complaint, when considered with the policy, precludes the possibility of coverage. *Illinois Emasco Ins. v. Northwestern Nat'l Cas. Co.*,337 Ill. App. 3d 356, 358 (1st Dist. 2003). An insurer must defend a potentially covered claim even if only one of several theories of recovery falls within the potential coverage of the policy. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co*., 144 Ill.2d 64, 73 (1991).[3] If policy terms are susceptible to more than one meaning they are considered ambiguous and will be construed strictly against the insurer and in favor of the insured. *McKinney v. Allstate Ins. Co*., 188 Ill.2d 493, 497 (1999).

Moreover, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer. *Wilson*, 237 Ill.2d at 503. Further, "[i]t is the insurer's burden to affirmatively demonstrate the applicability of an exclusion." *Insurance Corp. of Hanover v. Shelborne Associates*, 398 Ill. App. 3d 795, 799 (1st Dist. 2009). When an insurer relies on a provision that it contends excludes coverage to reject a tender of defense, the court must review the applicability of the provision to ensure it is clear and free from doubt that the policy's exclusion prevents coverage. *Bituminous Cas. Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564 (5th Dist. 1991).

---

[3] It is well-settled Illinois law that if the insurer "has a duty to defend as to at least one count of the lawsuit, it has a duty to defend in all counts of that lawsuit." *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 501, n.2 (2010).

III. **The Trademark Infringement Claims Brought Against Blue Sky in the Noble Action Met the Federal Policies' Definition of Advertising Injury and Did Not Fall Within the IP Exclusion Nor Within the Intended Injury Exclusion, Thereby Obligating Federal to Defend Blue Sky in that Litigation**

   A. **Nobel's Trademark Claims Meet the Definition of "Advertising Injury" Contained in the Federal Policies**

The Federal Policies provide coverage for allegations of advertising injury defined as an injury sustained by "an offense of infringing, [in insured's advertising] -- upon [an injured party's] registered trademarked name, slogan or title, causing injury. 2007 Policy, Form 80−02−2002 at p. 25 and 2008 Policy, Form 80-02-2058 at p. 34. There is no dispute that the trademark infringement claims in the Nobel Complaint alleged that Blue Sky was liable for the offense of infringing on Noble's registered trademark in an advertisement. Federal concedes (Federal Memo., at pp. 9-10; Blue Sky Complaint, Ex. D at p. 7) that the Claims for Relief in the Nobel Action for infringement of four registered trademarks fall within the Federal Policies' definition of advertising injury.

The gravamen of Nobel's trademark claims is detailed in Paragraph 19 of the Nobel Complaint:

> Blue Sky, without permission or authority from Nobel, has infringed Nobel 's … marks by various acts, including the promotion, advertising, and offering for sale of products using the NOBEL, NOBEL BIOCARE, REPLACE, NOBELREPLACE, and NOBELGUIDE marks.

The alleged injury from the trademark infringement is spelled out in Paragraph 21 of the Nobel Complaint:

> Blue Sky … is now promoting its goods using the NOBEL, NOBEL BIOCARE, REPLACE, NOBELREPLACE, and NOBELGUIDE marks with the intent to cause confusion and mistake and to deceive customers.

Nobel's allegations that Blue Sky infringed on those registered Nobel trademarks form the factual basis for the trademark infringement claims raised in Claims III and VI of the Nobel

8

Complaint. In addition, these alleged offenses of infringement form the factual foundation for the trademark dilution claim in Claim VII of the Nobel Complaint:

> Blue Sky's use of the NOBEL … marks tarnishes and dilutes the distinctive quality of Nobel's NOBEL BIOCARE, REPLACE, NOBELREPLACE, and NOBELGUIDE marks.

Nobel Complaint, ¶64.

Nobel's allegations in the Nobel Complaint, that Blue Sky's advertising infringed upon Nobel's registered trademarks causing Nobel injury, conformed precisely to the Federal Policies' definition of "advertising injury," triggering Federal's duty to defend Blue Sky in the Nobel Action.

    **B.    The IP Exclusion Does Not Apply to the Otherwise Covered "Advertising Injury" Claims Because They Were Based Solely upon Nobel's Trademark Infringement Allegations and Were Independent From and Unrelated to the Patent Infringement Claims**

Federal cannot avoid coverage by invoking the IP Exclusion merely because Nobel brought the covered advertising injury trademark infringement claims in the same action that it also asserted independent claims for patent infringement. While the IP Exclusion states that the "insurance does not apply to …advertising injury arising out of, giving rise to or in any way related to any actual or alleged: infringement or violation…of any intellectual property law or right…," this exclusion applies, "unless such injury: is caused by an offense described in the definition of **advertising injury**; and does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury**." 2007 Policy, Form 80−02−2002 at 16-17; Exhibit B, Form 80-02-2058 at pp. 23-24. The trademark claims in the Nobel Action fall squarely within this exception to the IP Exclusion.

The alleged trademark injuries are caused by offenses specified in the definition of advertising injury. In denying a duty to defend, Federal takes the position that simply because

9

there are patent claims in the Nobel Action, without regard to anything else, Federal has no duty to defend the admittedly otherwise covered claims. The mere coincidence that the Nobel Complaint also included patent infringement claims does not nullify the exception, as Federal contends, because the trademark claims do not arise out of, give rise to, or relate to the existence of the patent claims.

Federal wishfully asserts, without support from the plain language of the Federal Policies (or from any relevant case), that: 1) claims for "'advertising injury' will not be covered if they are *accompanied by* any other claims for violation of 'intellectual property laws or rights;'", and 2) "*the presence of* claims for 'intellectual property law or right' violations other than those identified in the definition of 'advertising injury' (such as patent claims) trigger the [IP Exclusion]." (Federal Memo at p. 11-12) (emphasis added).

Federal's argument fails because the exception to the IP Exclusion does not state anywhere that advertising injury claims, when "accompanied by" or in "the presence of" non-advertising IP claims, fail to qualify for the exception. Federal wants this Court to rewrite the Federal Policies' language to state that covered advertising injury IP claims *accompanied by* or in *the presence of* non-advertising claims fall within the IP Exclusion. Courts, of course, are not permitted to rewrite policy language. *See FSC Paper Corp. v. Sun Insurance Company*, 744 F.2d 1279, 1281 (7th Cir. 1984).

In a recent decision directly on point, a federal district court considered the same IP Exclusion that is at issue here and held that, where there was a covered defamation claim, the insurer's duty to defend was not negated because the lawsuit also included an otherwise excluded IP claim. *Align Tech*, 673 F.Supp.2d at 967-68. In reviewing the IP Exclusion, the *Align Tech* court rejected the same argument Federal again presents here (no duty to defend if there is an IP claim made anywhere in the same complaint), and determined that "Federal's language [in the IP

10

Exclusion] does not put an insured reasonably on notice that Federal will not cover claims in a lawsuit whenever that lawsuit also includes a claim for intellectual property." *Id.* at 969.[4]

Likewise, *KLA-Tencor Corp. v. Travelers Indem. Co.*, 2003 WL 21655097 (N.D. Cal. 2003), considered a similar IP exclusion from a different insurer and found a duty to defend. The policy in that case excluded coverage for "'advertising injury' arising out of or directly or indirectly related to the actual or alleged publication or…. statements . . . which is claimed as an infringement…of any of [patent] rights or laws." *Id.* at *5. There, too, the court found a duty to defend even though the lawsuit included a claim for patent infringement. In particular, the court ruled that while the insured's alleged disparaging statements may have supported the patent claim, those statements, standing alone, could also form the basis for the tortious interference with contractual relations claims raised in the underlying case. As a result, the tortious interference claims were potentially covered and the insurer had a duty to defend. *Id.* at *6.

Here, like the claims in *Align-Tech* and *KLA-Tencor,* Nobel's trademark infringement and dilution claims against Blue Sky stood wholly on their own facts and were separate from the patent claims and therefore were covered under the Federal Policies and triggered Federal's duty to defend. No elements necessary to Nobel's trademark claims derived from the patent claims. Thus, as the trademark claims were "potentially or *arguably* within, the scope of coverage provided by the policy, [the insurer] must provide a defense." *Pipefitters Welfare Educ. Fund*, 976 F.2d at 1039.

*Santa's Best Craft, LLC v. St. Paul Fire & Marine* also supports Federal's duty to defend Blue Sky. 611 F.3d 339, 348 (7th Cir. 2010). The policy in *Santa's Best Craft* excluded from

---

[4] Federal, recognizing that *Align* undermines its argument, feebly attempts to distinguish the facts from the instant case by noting that Align "involved a 'personal injury' claim [defamation] rather than an "advertising injury" claim." (Federal Memo. at 13). This is a distinction without any difference. Just like the defamation claim that the *Align* court held did not arise out of or relate to an intellectual property right, the advertising injury (trademark claim) here does not arise out of or relate to the IP (patent) claim in the Nobel Complaint.

11

coverage "injury. . . that result[s] from any actual or alleged infringement…of any [trade dress] right," but the exclusion did not apply to "advertising injury that results from the unauthorized use of any: trademarked slogan…in your advertising." *Id.* at 347-48. The trial court held that, where the underlying complaint alleged infringement of a slogan, there was a duty to defend under Illinois law and the Seventh Circuit affirmed, reasoning: "unless a slogan infringement claim would not have arisen but for the trade dress violation claim (or necessarily arises out of the trade dress violation claim) - clearly not the case here - we cannot find that the exclusion for trade dress claims excuses St. Paul from a duty to defend." *Id.* at 348. As was the case in *Santa's Best Craft*, Nobel's trademark allegations fell within the category of "advertising injury offenses" in the Federal Policies. Because Federal cannot show that the trademark infringement claim would not have arisen but for the patent claims, the IP Exclusion did not excuse Federal's duty to defend. In other words, whether Blue Sky had or had not infringed Nobel's patents, Nobel's trademark claims remained, and Federal was obligated to defend the Nobel Action.[5]

As there is no reasonable basis to argue that Nobel's trademark claims arose out of or gave rise to Nobel's separate patent claims, Federal must pin its theory on a tortured reading of the words, "in any way related to." However, Federal's reading of these words in the broadest conceivable way approaches a bizarre Einsteinian view of 'relativity' (namely, that everything is relative). The Court should reject such an expansive interpretation of the Federal Policies.

---

[5] The other IP cases cited by Federal are inapplicable and, if anything, support Blue Sky's position. (Federal Memo. at 13). In *Native American Arts, Inc. v. Hartford Casualty Ins. Co.*, 435 F.3d 729, 733-34 (7th Cir. 2006), the policy exclusion applied specifically to trademark infringement and therefore logically was read to exclude an Indian Arts and Crafts Act claim premised on a trademark infringement. Similarly, in *American Family Mutual Ins. Co. v. Roth*, 381 Ill. App. 3d 760, 766 (1st Dist. 2008) and in *Global Computing, Inc. v. Hartford Casualty Co.*, 2007 WL 844618 *4 (N.D. Ill. 2007), the IP exclusions in dispute barred *all* IP Claims, without exception. Therefore, the Trade Secret and tortious interference claims arising out of IP rights in *American Family Mutual* and the Lanham Act and false designation claims that stemmed from trademark and patent infringement in *Global Computing* were naturally also found to be excluded. In contrast, the Federal Policies expressly *include* coverage for Advertising Injury and specifically *except* claims, such as trademark infringement, from the IP Exclusion.

12

For one, exclusionary provisions "are to be construed narrowly rather than broadly." *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Glenview Park Dist.* 158 Ill.2d 116, , 123 (1994). In addition, Federal's posited interpretation would render the language nonsensical when considered in the context of the entire policy. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 391 (1993). If 'all things are relative,' as Federal essentially contends, then some relationship could always be established between any two claims: *i.e.*, Blue Sky would never be entitled to a defense for advertising injury claims because both the covered trademark claims and excluded patent claims could always be said to be "related" since, for example, both were brought by Nobel and against Blue Sky. That example is as attenuated and legally irrelevant as Federal's unsupported contention that the trademark claims and the patent claims are "related" because they both have to do with the same dental implant products. (Federal Memo. at 13). Not only does the Nobel Complaint itself make no such factual nexus between the different claims, but the contention itself, which is little more than an unsubstantiated lawyers' argument, is inaccurate. The trademark NOBELGUIDE, for example, relates to a Nobel software service that is not the subject of any patent claims in the Nobel Complaint. Likewise, the trademarks NOBEL and NOBEL BIOCARE refer to the company, Nobel, and not to the products at issue in Nobel's patent claims. In any event, the absurdly broad reading that Federal proposes would convert the Federal Policies' advertising injury coverage into a mirage, rendering it meaningless.[6]

Federal has failed to make the required showing that it is clear and free from doubt that the trademark claims in the Nobel Complaint might have been covered by the Federal Policies.

---

[6] While the exception to the IP Exclusion does not expand to bring the trademark claims here back under the exclusion, it is not hard to hypothesize upon circumstances to which the language in the exception may apply. There are claims, such as unfair competition, that may be premised upon a patent infringement, as evidence of the unfair act. That claim in that instance, unlike the trademark claims here, could be said to arise out of, give rise to or in any way relate to the patent claim.

### C. The Intended Injury Exclusion in the Federal Policies by Definition Does Not Apply to the Specified Advertising Injury Claim Arising Out of the Trademark Claims in the Nobel Complaint

Because the trademark infringement causes of action in the Nobel Complaint do not require proof of willful, knowing or intentional conduct, the Intended Injury Exclusion in the Federal Policies did not preclude Federal's duty to defend. *See Capitol Indem. Corp. v. Elston Self-Serv.*, 551 F. Supp. 2d 711, 726 (N.D. Ill. 2008). As the *Capital Indem. Corp.* court held:

> [T]rademark infringement need not be willful to be actionable. Although the Lorillard Complaint does include allegations that Defendants acted intentionally, Lorillard need not prove that the Moving Defendants engaged in intentional or willful conduct to prevail. Thus, the intentional conduct exclusion does not relieve Capitol Indemnity of its owed a duty to defend.

*Id.* Other courts have reached the same conclusion. For example, in *Central Mutual Ins. Co. v. Stunfence, Inc.*, the court refused to apply an intentional acts exclusion to trademark claims, even where willfulness was alleged in the underlying complaint, because "assertions of intentional and willful conduct on the part of [insured] need not have been proved for [claimant] to recover damages for trademark infringement." 292 F. Supp. 2d 1072, 1081-82 (N.D. Ill. 2003).[7]

Thus, while the trademark claims in the Nobel Complaint alleged that Blue Sky's trademark infringement was intentional, the claims were not exclusively premised on finding Blue Sky liable for willful trademark infringement. In other words, Blue Sky could be found

---

[7] The fact that the Nobel Complaint alleged willfulness does not excuse Federal, as it asserts, from its duty to defend. (Federal Memo. at p.15) In *Wausau Bus. Ins. Co. v. Fisher Printing Co.*, 2008 WL 2704874 *5 (N.D. Ill. 2008), the court found allegations of copyright infringement could be proven without showing that defendant acted knowingly. Finding that the defendant was owed a defense by the insurer in spite of the allegations of willful and intentional conduct in the underlying complaint, the court held that: "A complaint that alleges, but does not require, proof of intent as a predicate for liability does not plainly predicate liability on a theory of intentional misconduct." *Id. See also Sun Elec. Corp. v. St. Paul Fire & Marine Ins. Co.*, 1995 WL 6109 at *7 (E.D. Ill. 1995) ("In cases where the complaint alleges intentional misconduct, courts have held that the false material exclusion does not apply if the plaintiff could recover without proving intent.") On the face of the Nobel Complaint, it is apparent that Nobel could prevail on the trademark infringement claims without proving the willfulness that is alleged.

liable on the trademark claims even if its acts were determined to have been committed without willful or knowing intent to injure. As such, the Intended Injury Exclusion did not apply to exclude coverage for the trademark claims in the Nobel Complaint and Federal was required to defend Blue Sky.

## CONCLUSION

The Nobel Complaint raised covered "advertising injury" claims under the Federal Policies that were not excluded by either the IP Exclusion or the Intended Injury Exclusion, obligating Federal to defend Blue Sky in the Nobel Action. The Court should enter judgment in Blue Sky's favor and against Federal on the issue of Federal's duty to defend.

Respectfully submitted,

**BLUE SKY BIO, LLC**


By: /s/ Robert A. Chapman
One of its Attorneys

Robert A. Chapman (6191210)
Peter M. Spingola (6243942)
Sara Siegall (6297622)
**CHAPMAN & SPINGOLA LLP**
77 West Wacker Drive – Suite 4800
Chicago, Illinois 60601
312/606-8752

15

## CERTIFICATE OF SERVICE

I, Robert A. Chapman, an attorney for plaintiff, hereby certify that on October 4, 2010, I caused the foregoing **Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings and in Support of Plaintiff's Cross-Motion for Judgment on the Pleadings,** to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                          /s/ Robert A. Chapman