DJC/#500498 2246-531-75

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BLUE SKY BIO, LLC, | ) | |
| | ) | No. 10 C 4612 |
| Plaintiff, | ) | |
| | ) | Honorable Suzanne B. Conlon |
| v. | ) | |
| | ) | Magistrate Judge Sheila M. Finnegan |
| FEDERAL INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FEDERAL INSURANCE COMPANY'S (A) REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND (B) BRIEF IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Federal Insurance Company ("Federal"), by and through its counsel, Tressler LLP, for its (A) Reply Brief in Further Support of its Motion for Judgment on the Pleadings and (B) Brief in Opposition to Plaintiff's Cross-Motion for Judgment on the Pleadings, states as follows:

## I. The Underlying Allegations Clearly Establish that the Patent and Trademark Claims Are Related, and the IPLR Exclusion Must Therefore Bar the Duty to Defend

Significantly, in the Introduction to Blue Sky's Cross-Motion for Judgment on the Pleadings, Blue Sky admits that Federal's Intellectual Property Laws or Rights Exclusion ("IPLR Exclusion") "does not apply to any claim that falls within the specific definition of advertising injury, such as trademark infringement, *except if that otherwise covered advertising injury claim arises out of, gives rise to or relates in any way to an intellectual property right that is not one of the defined advertising injuries*." (Plaintiff's Brief at p. 1, emphasis added). Thus, both sides to this dispute agree that the IPLR Exclusion will apply to the trademark claim if that claim "arises

out of, gives rise to or relates in any way to an intellectual property right that is not one of the defined advertising injuries." *Id*. While Blue Sky concedes that the IPLR Exclusion theoretically applies in this fashion, it argues throughout its brief that the trademark claim is unrelated to the other intellectual property claims at issue in the suit, such as the patent claims, even going so far as to suggest that the presence of patent claims in the Underlying Suit was a "mere coincidence." Plaintiff's Brief at p. 10. However, as further documented herein, a review of the actual allegations in the Underlying Suit clearly establishes that the trademark and patent claims were indeed related in the eyes of the underlying plaintiffs ("Nobel") and were integrated parts of Nobel's strategy for protecting its intellectual property from Blue Sky's encroachments.

According to its terms, in order for the IPLR Exclusion to apply to the entire claim, Federal need only show that the trademark claim is "in any way" related to the other intellectual property rights which the underlying complaint alleges were breached. In its opening brief, Federal established that the trademark claim is indeed "in any way" related to the other intellectual property rights, and focused specifically on the relationship between the trademark claim and the patent claims alleged in the Underlying Suit. These two types of claims must be "in any way" related because the patents at issue in the patent claims relate to products and methods marketed under the marks at issue in the trademark claim. There is ample evidence of this relationship in the underlying Second Amended Complaint. Nobel expressly alleged that its products "include dental implants, abutments, individualized dental prosthetics and surgical kits." Complaint, Exhibit C, ¶7. It then proceeded to identify three patents pertaining to its dental implants and abutments. Complaint, Exhibit C, ¶¶ 8-10. It then alleged that it "extensively promotes its dental products and services under the NOBEL, NOBEL BIOCARE, REPLACE, NOBELREPLACE AND NOBELGUIDE marks." Complaint, Exhibit C, ¶ 15. In

light of these allegations, there can be no doubt that the products manufactured under the patents in question were marketed under the marks in question. To the extent it is even necessary, further evidence of this nexus is found in the fact that each of the patents at issue is expressly alleged to have been owned by Nobel Biocare USA, LLC, whose name is obviously derivative of two of the marks allegedly at issue—NOBEL AND NOBEL BIOCARE. Complaint, Exhibit C, ¶¶ 8-10, and 13.

There is more, however, to the relationship between the trademark and patent claims. In describing the consumer confusion resulting from Blue Sky's marketing activities on its website, Nobel established a nexus between the trademark claim and the patented technology at issue in the patent claims. The Nobel Plaintiffs specifically alleged:

> 22. At all relevant times, Blue Sky has maintained a website, www.blueskybio.com, which has included statements informing the world that certain Blue Sky implant products are "compatible" with Nobel's NOBELREPLACE® implant products, and in particular are "surgically compatible." These statements are likely to cause purchasers and potential purchasers of Blue Sky products to believe that Blue Sky's products are in fact surgically compatible with Nobel's NOBELREPLACE® implant products. In particular, these statements are likely to cause purchasers and potential purchasers of Blue Sky products to believe that Blue Sky implant products ***may be installed using the same surgical equipment and procedures used for installing Nobel's NOBELREPLACE® implant products, including the use of a step drill to create a cavity to receive the implant.***

Complaint, Exhibit C, ¶ 22 (emphasis added). The portion of this allegation which Federal has italicized establishes an additional undeniable nexus between the trademark and patent claims because the facts supporting the alleged trademark injury (consumer confusion as to whether step drills can be used to create a cavity to receive the Nobel implant) is related to the same universe of facts out of which the first patent claim is alleged to arise. In its First Claim for Relief, Nobel alleged that Blue Sky infringed U.S. Patent No. 5,795,160 by selling dental implant products "that are installed according to the invention claimed in the '160 patent." Complaint, Exhibit C,

¶ 26. Nobel further alleged that the '160 patent is entitled "Tapered Dental Implant in a Stepped Orifice" and attached a copy of that patent to its Second Amended Complaint. Complaint, Exhibit C, ¶ 8. The patent abstract itself indicates that the patent pertains to "a tapered dental implant and a method of installing the same in a stepped orifice…" See Exhibit 1 attached hereto, p. 23.[1] The detailed description of the patent describes the use of a step drill to create a stepped orifice into which the implant is inserted. *Id.* at pp. 26-28. Clearly, the use of a step-drill to create a stepped orifice is at issue in both the trademark and patent claims. Representations regarding this method of implantation gave rise to the consumer confusion resulting in trademark claim, and the question of whether Blue Sky infringed this patented method of implantation was at issue in the patent claim. This conclusion is apparent based only on a review of the underlying Second Amended Complaint and the exhibits attached thereto.

The manner in which Nobel structured its pleading further supports the contention that the trademark and patent claims are related. Significantly, it prefaced its claim for trademark infringement (Third Claim for Relief) by expressly incorporating by reference all of the factual allegations pertaining to the preceding patent claims. Complaint, Exhibit C, ¶ 44. If the trademark and patent claims were completely unrelated as Blue Sky now suggests, there would have been absolutely no reason for Nobel to incorporate the allegations relevant to the patent claims into its claim for relief arising out of the registered trademarks.

Simply put, based on the allegations of the Underlying Suit, the trademark and patent claims were obviously related elements of the Nobel Plaintiffs' attempt to counter Blue Sky's encroachments on its intellectual property. Because the patents and trademarks relate to the same family of products, because the debate over the use of a step drill to create a stepped orifice

[1]Because the copy of the Second Amended Complaint attached as Exhibit C to Blue Sky's complaint was not photocopied in its entirety, Federal has submitted a complete copy (including exhibits) as Exhibit 1 to this brief.

is alleged to have resulted in both trademark and patent claims, and because Nobel expressly incorporated the patent claims into the trademark claim, Blue Sky's assertion that the existence of trademark claims and patent claims in the same suit is a "mere coincidence" defies credulity.

## II. Blue Sky's Approach Would Improperly Render the IPLR Exclusion Meaningless in All Circumstances

Ignoring the actual policy language, Blue Sky adopts the hyper-technical position that the trademark claim cannot in any way relate to the patent claims because the elements of a trademark claim are different than the elements of a patent claim. Plaintiff's Brief at 11. However, this approach cannot possibly give effect to the intent of the exclusion because it would render the final provision in the exception to the exclusion a nullity. That provision effectively establishes that the IPLR Exclusion will apply to bar coverage, even for a claim that is otherwise covered under the definition of "advertising injury," if the injury "in any way relates to any…infringement…of any **intellectual property law or right** other than one described in the definition of **advertising injury**." If, as Blue Sky suggests, differences in the legal elements of the various rights set forth in the definition of "intellectual property law or rights" render those rights necessarily unrelated, than the provision will never be triggered because the various intellectual property rights, which all have different legal elements, will always be deemed unrelated. Under Blue Sky's approach, a claim involving a registered trademark could never be related in any way to a patent claim, or any of the other claims set forth in the definition, because the various claims have unique elements. Surely this is not the intent of the contract language in question. Indeed, if the intent behind the provision was to make it impossible for one intellectual property claim to relate to another, there would have been no reason whatsoever to include the last provision in the exception to the exclusion at all. Rather, the exception would simply state that the exclusion applies unless the injury is caused by an offense described in the definition of

advertising injury. This is clearly not the case, and by expressly making *the absence of* any related intellectual property claims one of the prerequisites for triggering the exception to the exclusion, the provision clearly allowed for the likelihood that an infringement of one intellectual property law or right could be related to the infringement of another intellectual property law or right.

According to the Illinois Supreme Court: "When construing the language of an insurance policy, [the court] must assume that every provision was intended to serve a purpose. Thus, an insurance policy must be considered as a whole; all of the provisions, rather than an isolated part, should be examined to determine whether an ambiguity exists." *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433, 930 N.E.2d 999, 1004 (Ill. 2010). An interpretation of a provision in an insurance policy that is inconsistent with the policy as a whole, and would render the provision superfluous, is unreasonable. *Munoz*, 237 Ill. 2d at 437, 930 N.E.2d at 1006. "Courts will generally avoid interpretations [of contracts] that render contract terms surplusage." *Dowd & Dowd, Ltd. V. Gleason*, 181 Ill. 2d 460, 693 N.E.2d 358, (Ill. 1998). Blue Sky's proposed approach runs directly counter to the foregoing black letter law as it asks the court to ignore the plain meaning of a particular policy provision. In contrast, Federal's approach, which considers the relatedness issue based upon the totality of the facts actually alleged in the complaint, allows the Court to apply each and every provision in the IPLR exclusion consistent with its obvious intent. When each provision in the exclusion is applied, Federal is protected from having to defend intellectual property claims, even those falling within the definition of "advertising injury," when the suit includes other related intellectual property claims that do not satisfy the definition of "advertising injury." Thus, this exclusion effectively prevents Federal from having to defend expensive patent litigation simply because a related claim for infringement of

registered trademark is also alleged. Absent an exclusion such as the IPLR Exclusion, insurers would have to incur the expense of defending the uncovered patent claim because courts under earlier versions of general liability policies have held that if a complaint alleges one potentially covered claim then the insurer must defend all claims, including those that are not covered. The inequity of such an approach is profound in the context of intellectual property litigation, and it is not difficult to see how an insurer without an IPLR Exclusion could find itself essentially hijacked by an uncovered patent claim. Indeed, but for the IPLR Exclusion, that inequity would have been borne out in this very case given the patent-centric focus of the Underlying Suit. Requiring Federal to defend such an action, when its IPLR Exclusion was obviously intended to prevent it from owing such a defense, not only runs counter to Illinois contact law, but would also violate any notion of fairness or equity.

## III. The *Align* Decision From California is Distinguishable

Blue Sky relies extensively upon *Align Technology v. Federal Insurance Company*, 673 F. Supp.2d 957 (N.D. Cal. 2009), a district court decision which interpreted a limited portion of Federal's IPLR Exclusion under California law and found that it did not bar coverage for a claim for defamation. *Align* is distinguishable on its facts because the court found it significant that at least some of the injuries at issue in that action were unrelated to intellectual property and therefore fell outside the scope of the IPLR Exclusion. The primary claims in *Align* involved defamation, and some of the defamatory statements were found to involve business issues unrelated to any intellectual property rights. *Id.* at 972. For example, Align's executives were alleged to have made defamatory statements to the effect that executives at its competitor, OrthoClear, made false promises to their employees, unlawfully solicited employees, and breached non-competition agreements. *Id.* The court found that the injury associated with these

statements was in no way related to intellectual property rights. Rather, OrthoClear alleged that Align was engaged in a deliberate strategy to destroy OrthoClear and employed methods completely unrelated to encroachments upon intellectual property. *Id.* No similar conclusion is possible here, and Blue Sky does not contend that Nobel's action involves anything but intellectual property rights. What is more, as established in Section I above, Nobel's trademark claims are related to its patent claims because they arise out of the same products and methods. This relationship triggers the IPLR Exclusion so as to preclude coverage for the ***entire*** Underlying Suit.

In addition to being distinguishable on its facts, *Align* is also distinguishable as a matter of law. The *Align* court cited California's Reasonable Expectations Doctrine as a basis for finding a duty to defend. 673 F.Supp.2d at 967, 969 and 971. Significantly, "the reasonable expectation test has been rejected by the courts of [Illinois]." *Smagala v. Owen*, 307 Ill. App. 3d 213, 219, 717 N.E.2d 491, 496 (1st. Dist. 1999). *See also Am. Country Ins. Co. v. Cash*, 171 Ill. App. 3d 9, 11, 524 N.E.2d 1016, 1018 (1st Dist 1988) ("Illinois courts have declined to apply the reasonable expectations doctrine to insurance contracts."). Thus, the method of legal analysis employed by the California court is inconsistent with Illinois law, and *Align* is of dubious relevance to the instant dispute.

Blue Sky also relies heavily on *KLA-Tencor Corp. v. Travelers Indem. Co*., 2003 WL 21655097 (N.D. Cal. 2003), but even a cursory examination of the exclusion at issue in that California case reveals that it differs substantially from Federal's IPLR Exclusion. In fact, the exclusion issued by Travelers had no clause establishing that the existence of a related intellectual property claim not covered by the definition of "advertising injury" would preclude coverage for the entire claim.

The same is true of *Santa's Best Craft, LLC et al. v. St. Paul Fire and Marine Ins. Co*., 611 F.3d 339 (7th Cir. 2010), where the court construed an exclusion that disallowed coverage for "injury or damage . . . that results from any actual or alleged infringement or violation of any of the following rights or laws:. . . trade dress, . . . trademark, other intellectual property rights or laws." The exclusion, however, contained an exception for "unauthorized use of … trademarked slogan … of others in your advertising." *Id.* at 348. As the underlying suit alleged infringement of slogan, the court found that the exception to the exclusion applied and that St. Paul owed a duty to defend. *Id.* The court rejected St. Paul's contention that the slogan claim was really an excluded claim for trade dress infringement. The court reasoned that under St. Paul's exclusion, unless the slogan infringement claim would not have arisen but for the trade dress violation claim, the exclusion could not apply. *Id.* This type of "but for" analysis would not apply under Federal's unique IPLR Exclusion which, unlike the St. Paul exclusion, expressly provides that one intellectual property claim can in fact preclude coverage for another intellectual property claim so long as they are "in any way" related.

## IV. Blue Sky Cannot Ignore The Allegations of Willfulness in the Underlying Suit

In its opening brief, Federal established that the Second Amended Complaint expressly alleges that Blue Sky willfully and intentionally infringed Nobel's marks. At no point does Nobel allege that Blue Sky acted negligently in violating the marks. In fact, with regard to its trademark claim, it narrowly framed its Prayer for Relief by requesting only an order adjudging that Blue Sky "willfully" infringed the marks. These allegations place the claim squarely within the scope of Federal's Expected or Intended Injury Exclusion. Under Illinois law, a liability insurer has no duty to defend unless the underlying claim contains explicit factual allegations that potentially fall within the policy coverage. *Amerisure Mutual Ins. Co. v. Microplastics*, Inc.,

2010 U.S. App. LEXIS 19485 (7th Cir. 9/20/10). As all of the allegations regarding Blue Sky's intent state that it willfully infringed the trademarks, there are no explicit factual allegations which would place the claim outside of the Expected or Intended Injury Exclusion.

Blue Sky relies upon *Capital Indem. Corp. v. Elston Self-Serv*., 551 F.Supp.2d 711, 726 (N.D. Ill. 2008) for the proposition that the exclusion does not apply because trademark claims do not require proof of willfulness. However, that case appears to ignore the fact that under Illinois law, it is the actual allegations of the underlying complaint that control, not some hypothetical version of the complaint that might have or could have been asserted. *Steadfast Ins. Co. v. Caremark Rx, Inc.*, 835 N.E.2d 890 (Ill.App.Ct. 2005); *Del Monte Fresh Produce N.A. Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 644 (7th Cir. 2007); *Western States Ins. Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699 (7th Cir. 1999). As explained by the Seventh Circuit just last month, "when an insurer determines whether it has a duty to defend, 'implied claims that are not specifically alleged can be ignored.'" *Amerisure Mutual*, at **5, quoting Del Monte, 500 F.3d at 644.*

The Seventh Circuit's disapproval of reliance upon implied or hypothetical claims to find a duty to defend was aptly demonstrated in *Connecticut Indemnity Co. v. DER Travel Service,* Inc., 328 F.3d. 347 (7th Cir. 2003). The insured in that case was alleged to have intentionally violated the Illinois Consumer Fraud Act ("ICFA") in the manner in which it charged a tax to its customers. Although the underlying complaint, like the underlying complaint in the instant action, alleged only intentional injury, the trial court found a duty to defend because a claim could have been asserted for negligent violation of the ICFA. On appeal, the Seventh Circuit reversed, finding that the underlying allegations revealed "not a hint of negligent conduct." *Id.* at 350. The court went on to expressly reject the assertion that a defense was owed because a

claim for negligent violation could have been asserted. *Id.* at 350-51. According to the Seventh Circuit, "it is the actual complaint, not some hypothetical version, that must be considered." *Id.*

Like the complaint in *Connecticut Indemnity*, the trademark infringement allegations against Blue Sky contain "not a hint of negligent conduct." As Federal's duty to defend analysis was governed by the actual allegations rather than some hypothetical allegations, it was fully entitled to rely upon the allegations of willfulness in asserting its Expected or Intended Injury Exclusion to deny the duty to defend.

## V. CONCLUSION

For all of the foregoing reasons, as the Intellectual Property Laws or Rights Exclusion and the Expected or Intended Injury Exclusion bar coverage for the Underlying Suit, Federal Insurance Company properly denied the duty to defend, did not breach its policies, and is entitled to judgment in its favor pursuant to Rule 12(c).[2]

TRESSLER, LLP

/s/ *Daniel J. Cunningham*
One of Its Attorneys

Daniel J. Cunningham
Kathy Karaboyas Malamis
TRESSLER, LLP
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606-6399
(312) 627-4000
dcunningham@tresslerllp.com

[2] In the unlikely event the court denies Federal's motion, Federal reserves the right to conduct discovery regarding the amount of damages that Blue Sky claims are at issue.