IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Blue Sky Bio, LLC,             )
                               )
              Plaintiff,       )
                               ) Civil Action No.: 10 C 4612
       v.                      )
                               ) Suzanne B. Conlon, Judge
Federal Insurance Company,     )
                               )
              Defendant.       )

## MEMORANDUM OPINION AND ORDER

Blue Sky Bio, LLC filed a breach of contract suit against Federal Insurance Company, alleging Federal breached its duty to defend Blue Sky under two insurance policies. The parties both move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, Blue Sky's motion for judgment on the pleadings is denied, and Federal's cross-motion is granted.

## BACKGROUND

On February 28, 2008, Nobel Biocare Services AG, Nobel Biocare AB and Nobel Biocare USA, LLC (collectively, "Nobel") filed suit against Blue Sky, a competitor in the dental implant industry, in the United States District Court for the Central District of California, asserting patent infringement, federal and common law trademark infringement, false designation of origin, common law and statutory unfair competition, federal trademark dilution, Lanham Act false advertising and California statutory false advertising claims. Compl., Ex. C.; Def. Reply Brief, Ex. 1. Specifically relevant to this case, Nobel alleged that Blue Sky used Nobel's Replace®, Nobel®, Nobel Biocare®, NobelReplace® and NobelGuide® trademarks to

advertise, promote and offer Blue Sky products for sale without Nobel's permission or authority and with the intent to cause confusion among consumers.[1] *Id.* at ¶¶ 19-21. Nobel also sought relief arising from Blue Sky's alleged infringement of three of Nobel's patents. *Id.* at ¶¶ 25, 33, 67.

Blue Sky notified Federal of the Nobel suit and requested defense and indemnity in the Nobel case under two nearly-identical insurance policies that Blue Sky purchased from Federal. Compl., Ex. D. Pursuant to the policies, Federal agreed to defend claims against Blue Sky and to pay reasonable attorneys' fees and necessary litigation expenses, subject to the terms and conditions of the policies whether or not the lawsuit "is false, fraudulent or groundless." Compl., Ex. A at 207; Ex. B at 209. The policies provide coverage for damages that Blue Sky became legally obligated to pay for "advertising injury." *Id.*, Ex. A at 206; Ex. B at 207. Advertising injury is defined in the policies as:

> ... injury, other than bodily injury, property damage or personal injury, sustained by a person or organization and caused by an offense of infringing, in that particular part of your advertisement about your goods, products or services, upon their:
>
> - copyrighted advertisement; or
> - registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

*Id.*, Ex. A at 228; Ex. B at 236 (emphasis in original omitted).

---

[1] In its complaint against Blue Sky, the allegations regarding Nobel's trademarks, other than the NOBEL® trademark, stated the date of registration, and attached a copy of the registration confirmation. While not including a similar allegation regarding the NOBEL® mark, Nobel referred to the Nobel® trademark in other allegations in its complaint. Def. Reply Brief, Ex. 1 at ¶¶ 15-16. Nobel's ownership of the Nobel® trademark is uncontested in this case.

In a letter to Blue Sky dated October 9, 2008, Federal denied defense and indemnity for the Nobel lawsuit. Compl., Ex. D. Federal acknowledged Nobel's suit alleged trademark infringement constituting an advertising injury under the policies, but stated the suit "seeks damages on account of violations or infringements of intellectual property laws or rights, including patent infringement, which invokes applicability of the exclusion." *Id.* at 7 (emphasis in original omitted). Federal also maintained that the expected or intended injury exclusion under the policies applied because Nobel alleged in its complaint that Blue Sky intentionally infringed Nobel's trademarks. *Id.* On December 15, 2009, Blue Sky and Nobel settled the California suit on a confidential basis. Compl. at ¶ 22. Blue Sky contends that it incurred in excess of $800,000 in attorneys' fees and related litigation costs in the Nobel suit. *Id.* at ¶ 23. Blue Sky seeks Federal's payment of its attorneys' fees and litigation costs, not indemnity for the settlement reached with Nobel.

The parties agree that Nobel's trademark infringement claims fell within the definition of advertising injury in the policies. There is a disagreement as to the applicability of the intellectual property laws or rights exclusion and the expected or intended injury exclusion. The exclusions form the sole basis of the parties' cross-motions for judgment on the pleadings.

## ANALYSIS

### I. Legal Standard.

Blue Sky and Federal dispute the applicable standard of review for a motion for judgment on the pleadings. Relying on *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991), Federal contends the standard used in considering a Rule 12(b)(6) motion to dismiss applies. Blue Sky

contends that *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993), was decided after *Wood*, and therefore the summary judgment standard applied in *Alexander* controls.

The Rule 12(b)(6) standard applies to a motion for judgment on the pleadings. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Supreme Laundry Service, L.L.C. v. Hartford Casualty Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *Wood*, 925 F.2d at 1581. While citing *Alexander* for the principle that Rule 12(c) permits judgment to be entered based only on the pleadings, the *Northern Indiana* court did not adopt the *Alexander* summary judgment standard for Rule 12(c) motions. *Northern Indiana*, 163 F.3d 452. Accordingly, the motion to dismiss standard applies to the cross-motions for judgment on the pleadings.

Utilizing the Rule 12(b)(6) standard, judgment on the pleadings is appropriate "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief," construing the facts in the light most favorable to the non-moving party. *Buchanan-Moore*, 570 F.3d at 827 (quoting *Northern Indiana*, 163 F.3d at 452 (internal quotations omitted)); *Supreme Laundry*, 521 F.3d at 746. Exhibits attached to the complaint are part of the pleading and may be reviewed when considering a motion for judgment on the pleadings. Fed. R. Civ. P. 10(c); *Northern Indiana*, 163 F.3d at 452. The cross-motions must be reviewed independently; "denial of one does not necessarily constitute the grant of the other." *Crosby v. Regional Transp. Authority*, No. 07 C 6235, 2010 WL 2350707, at *1 (N.D. Ill. June 11, 2010) (Kocoras, J.) (citing *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944)).

4

## II. Duty to Defend

Illinois law governs this dispute. The court must compare the facts of the underlying Nobel complaint to the relevant provisions in Blue Sky's insurance policies to determine whether Federal had a duty to defend. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010); *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73, 578 N.E.2d 926, 930 (Ill. 1991). The insurance policies and the allegations in the Nobel complaint are liberally construed in favor of Blue Sky, and "any doubts and ambiguities are resolved against the insurer." *Amerisure*, 622 F.3d at 811; *Wilkin*, 144 Ill.2d at 74, 578 N.E.2d at 930. Federal had a duty to defend Blue Sky if the factual allegations state a claim that even potentially fell within the insurance policies. *Wilkin*, 144 Ill.2d at 73, 578 N.E.2d at 930. Federal bears the burden of proving that an exclusion under the insurance policies bars a duty to defend. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992).

### A. Intellectual Property Laws or Rights Exclusion

The first exclusion at issue is the intellectual property laws or rights exclusion under the policies:

> This insurance does not apply to any actual or alleged . . . advertising injury . . . arising out of, giving rise to or in any way related to any actual or alleged:
>
> • assertion; or
>
> • infringement or violation;
>
> by any person or organization (including any insured) of any intellectual property law or right, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.
>
> This exclusion applies, unless such injury:

> • is caused by an offense described in the definition of advertising injury; and
>
> • does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any intellectual property law or right, other than one described in the definition of advertising injury.

Compl., Ex. A at 219-20; Ex. B at 225-26. The definition of intellectual property law or right under the policies includes patents. *Id.,* Ex. A at 229; Ex. B at 242.

Federal acknowledges that the alleged infringement of Nobel's trademarks constituted an advertising injury under the policies, but argues the exclusion precludes a duty to defend because Nobel's trademark infringement claims were related to its patent infringement claims against Blue Sky. Federal concludes Nobel's trademark and patent infringement claims are necessarily related because they are both in the same complaint. Def. Memo. at 11-12. Blue Sky contends trademark and patent infringement claims have different legal elements and are therefore unrelated. Pl. Memo. at 11.

In support of their respective arguments, Federal cites *ISS Research, LLC v. Federal Ins. Co.*, No. 3:10-CV-41, 2010 WL 4791893 (W.D.N.C. Nov. 18, 2010), while Blue Sky relies upon *Align Technology, Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957 (N.D. Cal. 2009).[2] Although both cases interpret exclusions similar to the intellectual property laws or rights exclusion in Blue Sky's policies, neither case is outcome-determinative. The *Align* court found the exclusion inapplicable because the alleged facts revealed no relationship "between [the defamatory] statements and Align's conduct with respect to intellectual property rights." *Align*, 673 F. Supp.

---

[2] The two additional cases Blue Sky cites, *KLA-Tencor Corp. v. Travelers Indemn. Co. of Illinois*, No. C-02-05641, 2003 WL 21655097 (N.D. Cal. April 11, 2003) and *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339 (7th Cir. 2010), are inapposite because of differences in the exclusion provisions.

6

2d at 972. The *ISS* court found the exclusion applicable because the alleged facts demonstrated the asserted personal injury claim was based on the unauthorized use of an individual's photograph (*i.e.*, a misappropriation of a likeness), falling within the exclusion's definition of intellectual property laws or rights. *ISS*, 2010 WL 4791893, at *4-*5.

Federal's insurance policies with Blue Sky do not provide that an advertising injury claim is excluded from coverage if the underlying complaint also asserts a patent infringement claim. As in *Align* and *ISS*, the factual allegations of the Nobel complaint must be examined to determine whether Nobel's trademark and patent infringement claims against Blue Sky were related so as to fall within the insurance policies' intellectual property laws or rights exclusion. *Amerisure*, 622 F.3d at 810; *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.,* 500 F.3d 640, 643 (7th Cir. 2007). Nobel's complaint alleged that it owned patents for tapered dental implants in a stepped orifice, the multi-lobed abutment and the implant with internal multi-lobed interlock, and the Nobel®, Nobel Biocare®, NobelReplace®, Replace® and NobelGuide® trademarks. Def. Reply, Ex. 1 at ¶¶ 8-15. Nobel alleged it extensively promoted its dental products, including its dental implants, abutments, individualized dental prosthetics and surgical kits, under its trademarks. *Id.* at ¶¶ 7, 15, 17. Nobel also alleged that its Nobel®, Nobel Biocare®, NobelReplace®, Replace® and NobelGuide® trademarks "are distinctive designations of the source of origin of Nobel's dental products and services" and distinguished its dental products and services from those of others. *Id.* at ¶¶ 16, 18. Nobel asserted trademark and patent infringement claims against Blue Sky in this sparse context.

Liberally construing the insurance policies and the Nobel complaint in Blue Sky's favor, the factual allegations in Nobel's complaint demonstrate that the trademark and patent

infringement claims against Blue Sky were related.³ Based on the foregoing, the intellectual property laws or rights exclusion foreclosed Federal's duty to defend Blue Sky.

B.   **Expected or Intended Injury Exclusion**

The second exclusion at issue is the expected or intended injury exclusion under the policies. This exclusion provides that, "[t]his insurance does not apply to advertising injury . . . arising out of an offense, committed by or on behalf of the insured, that: is intended by such insured; or would be expected from the standpoint of a reasonable person in the circumstances of such insured; to cause injury." Compl., Ex. A. at 216 (emphasis in original omitted); *see also* Compl., Ex. B. at 222 (Ex. B does not include the phrase "arising out of an offense, committed by or on behalf of the insured, that: is . . ."). Federal asserts the exclusion applies because Nobel's complaint included allegations that Blue Sky intentionally and willfully infringed Nobel's trademarks. Blue Sky contends Nobel could have succeeded on its trademark infringement claims without showing intentional or willful conduct.

The factual allegations of Nobel's complaint govern the inquiry. *Amerisure*, 622 F.3d at 810; *Del Monte*, 500 F.3d at 643. Nobel alleged federal trademark infringement claims pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a). Def. Reply Brief, Ex. 1 at ¶¶ 41, 45. Nobel was only required to show that Blue Sky's use of the trademarks caused actual confusion that resulted in actual damage to Nobel. *Central Mut. Ins. Co. v. Stunfence, Inc.*, 292 F. Supp. 2d 1072, 1082 (N.D. Ill. 2003) (Shadur, J.); *see also Capitol Indem. Corp. v. Elston Self Serv. Wholesale*

---

³Blue Sky also contends the intellectual property laws or rights exclusion contains an "exception" precluding application of the exclusion. Pl. Memo. at 9. Even assuming the section of the exclusion beginning with "[t]his exclusion applies, unless such injury. . . ." constitutes an exception, the determination that Nobel's trademark infringement claims against Blue Sky were related to its patent infringement claims is equally germane to the exception; the exception does not apply.

8

*Groceries, Inc.*, 551 F. Supp. 2d 711, 726 (N.D. Ill. 2008) (Pallmeyer, J.), *aff'd*, 559 F.3d 616 (7th Cir. 2009); *Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 748-50 (S.D. Ind. 2009) (Hamilton, J.). Nobel would not have had to amend its complaint to succeed on its trademark infringement claims as was necessary in *Western States Ins. Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699, 701 (7th Cir. 1999).[4]

While Nobel used the terms "intentional" and "willful" in its complaint, including its prayer for relief, Nobel may have done so to obtain treble damages on its trademark infringement claims. Def. Reply Brief, Ex. 1 at p. 20; *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 746 (7th Cir. 2001); *Aearo*, 676 F. Supp. 2d at 750, n.5. Unlike *Del Monte*, 500 F.3d at 645, allegations of willful conduct or knowledge of falsity were not required for Nobel to prove its trademark infringement claims. *Stunfence*, 292 F. Supp. 2d at 1082; *Aearo*, 676 F. Supp. 2d at 749-50.

The factual allegations in Nobel's complaint state a claim of trademark infringement that potentially falls within Blue Sky's insurance policies. *Wilkin*, 144 Ill.2d at 73, 578 N.E.2d at 930. Accordingly, the intended or expected injury exclusion is inapplicable. However, Federal did not have a duty to defend Blue Sky because the intellectual property laws or rights exclusion applied.

---

[4]Federal also cites *Connecticut Indem. Co. v. DER Travel Service, Inc.*, 328 F.3d 347 (7th Cir. 2003) and *Amerisure*. Yet, Blue Sky's insurance policies do not limit coverage only to negligent acts, errors or omissions like the policy in *Connecticut Indem.*, 328 F.3d at 349. Nor did Blue Sky offer hypothetical scenarios to bring Nobel's allegations within the policies' coverage as in *Amerisure*, 622 F.3d at 811-12.

## CONCLUSION

Although the intended or expected injury exclusion did not apply, the intellectual property laws or rights exclusion in the policies precluded Federal's duty to defend Blue Sky in the Nobel suit. Therefore, Federal's motion for judgment on the pleadings is granted, and Blue Sky's cross-motion is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

December 17, 2010